Laura Fleming, Bar No. 219287
lf@paynefears.com
Robert T. Matsuishi, Bar No. 259182
rtm@paynefears.com
Blake A. Dillion, Bar No. 305838
bad@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendants
ABM Industries, Inc. and ABM Industry Groups, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Vicente Hernandez,<br><br>   Plaintiff,<br><br> v.<br><br>ABM Industries, Inc., ABM Industry Groups, LLC, and Does 1 through 20, inclusive,<br><br>   Defendants. | Case No. 5:22-cv-9098<br><br>[Removed from Santa Clara County Superior Court, Case No. 22CV405373]<br><br>**PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441**<br><br>Filed Concurrently with Supporting Declarations Filed Concurrently Under Separate Cover |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF, AND HIS COUNSEL OF RECORD:**

 **PLEASE TAKE NOTICE** that Defendants ABM Industries, Inc. and ABM Industry Groups, LLC hereby remove this action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California, on the following grounds:

Case No.

## I. INTRODUCTION

1. This Court also has jurisdiction over this action because complete diversity exists between Plaintiff Vicente Hernandez ("Plaintiff") and Defendants ABM Industries, Inc. ("ABM Industries") and ABM Industry Groups, LLC ("ABM Industry Groups", collectively "ABM" or "Defendants").

2. Plaintiff is a citizen of the State of California, and was a citizen at the time of the filing of his Complaint.

3. Defendants are now, and were at the time this action was commenced, citizens of the States of Delaware and New York within the meaning of 28 U.S.C. section 1332.

4. Plaintiff's Complaint, on its face and based on the evidence presented herein, contemplates a matter in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Pursuant to 28 U.S.C. section 1446(b), this case is being removed within thirty (30) days of Defendant receipt of a document (the "Complaint") where diversity of citizenship is apparent.

6. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's complaint alleges violations of federal law and under 28 U.S.C. § 1332 because this is a civil action between citizens of different states, and the matter in controversy exceeds $75,000.

7. Accordingly, Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

## II. PLAINTIFF'S STATE COURT ACTION

8. On or about October 5, 2022, Plaintiff filed an action against Defendants titled "*Vicente Hernandez, Plaintiff vs. ABM Industries, Inc., ABM Industry Groups, LLC, and DOES 1 through 20, inclusive,*" in the Superior Court of the State of California, County of Santa Clara, Case No. 22CV405373 (the "State Court Action").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

9. Thereafter Plaintiff served the Complaint on ABM via a California Code of Civil Procedure section 415.30 Notice and Acknowledgement Receipt, Judicial Council form PO-015, on November 23, 2022. A true and correct copy of the Summons and Complaint served on ABM in the State Court Action is attached to the Declaration of Blake A. Dillion ("Dillion Decl.") at ¶¶ 2-3, Exhs. A & B.

10. In his Complaint, Plaintiff alleges the following causes of action: (1) age discrimination; (2) disability discrimination; (3) retaliation; (4) retaliation in violation of the Whistleblower Protection Act; (5) wrongful termination in violation of public policy; and (6) failure to prevent discrimination and retaliation. (*Id*.)

11. On December 20, 2022, Defendants filed an Answer to Plaintiff's Complaint in the State Court Action. A true and correct copy of Defendants' Answer to Plaintiff's Complaint is attached to the Dillion Decl. at ¶ 4, Exh. C.

12. The Summons and Complaint, Proof of Service, and the Answer, are the pleadings, process, and orders filed and served upon or by Defendants in the State Court Action.

## III. COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFF AND DEFENDANTS

13. The Complaint, and each alleged cause of action contained therein, may be properly removed on the basis of diversity jurisdiction in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

### A. Plaintiff is a Citizen of the State of California

14. On information and belief, Plaintiff is now, and was at the time this action was commenced, a citizen of the State of California within the meaning of U.S.C. § 1332(a); he resided in Santa Clara, California, State of California. (See Compl. at ¶ 4); *see also Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return."); *Lew v. Moss*, 797 F.2d 747,

751 (9th Cir. 1986) (explaining that residency creates a rebuttable presumption of domicile for purposes of establishing diversity of citizenship).

15. While "[r]esidence alone is not the equivalent of citizenship … the place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also Hester v. Horowitz*, No. 14-00413 JMS-KLP, 2015 WL 127890, at *2 (D. Haw. Jan. 8, 2015) ("Although residence alone is not the equivalent of citizenship, the place of residence is prima facie the domicile."). It is presumed that a natural person's residence is also his domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *State Farm,* 19 F.3d at 519; *Lew*, 797 F.2d at 751.

16. Plaintiff alleges that all the acts committed against him giving rise to his Complaint took place in the County of Santa Clara, State of California. (Compl. at ¶ 4.)

17. Moreover, upon review of Plaintiff's personnel file, Plaintiff has represented himself as having been a resident of Santa Clara County since at least 2011—the date Defendant promoted him to Project/Area Manager. (*See* Declaration of Jenean Young ("Young Decl."), at ¶ 4.)

18. Upon information and belief, Plaintiff is a citizen of the State of California. "[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227-28 (9th Cir. 2019) (quoting *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016)) (brackets in original).

**B.  Defendants are Citizens of the States of Delaware and New York**

19. If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). If a party is a limited liability corporation, it is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th

1 Cir. 2006).

2    20.    Defendant ABM Industries is now and was at the time this action was filed a citizen of the States of Delaware and New York within the meaning of 28 U.S.C. § 1332.  (*See* Nelson Dec., at ¶¶ 1-4.) Defendant ABM Industries is incorporated in Delaware and has its principal place of business in New York.  (*Id*.)

   21.    Defendant ABM Industry Groups, LLC is now and was at the time this action was filed a wholly-owned subsidiary of ABM Industries (Nelson Dec., at ¶ 2.), and is, therefore, also a citizen of Delaware and New York within the meaning of 28 U.S.C. § 1332.  *See Johnson*, 437 F.3d at 899.

   22.    "Doe" defendants fictitiously named, but not served, are not joined in this Petition and Notice, and shall be disregarded for the purpose of determining removal jurisdiction.  28 U.S.C. § 1441(b)(1).  In determining whether diversity of citizenship exists, only the named defendants are considered.  *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.  As such, the district court was correct in only considering the domicile of the named defendants.")

   23.    Plaintiff is a citizen of the State of California, and was not a citizen of Delaware or New York when he filed the state court action and when this Petition and Notice was filed.  Thus, complete diversity exists between Plaintiff and Defendants.

**IV.   THE AMOUNT IN CONTROVERSY EXCEEDS THE $75,000 JURISDICTIONAL MINIMUM**

   24.    The jurisdictional minimum amount that must be in controversy, $75,000, was satisfied at the time of the filing of this action and is still satisfied by the facts set forth herein and described more specifically below.  28 U.S.C. § 1332(a) ("[D]istrict courts … have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

1  costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). The amount in controversy is determined from the allegations or prayer of the complaint. *See St. Paul Mercury Indem. Co. v. Red Cab Co*. 303 US 283, 289 (1938) (inability to recover an amount adequate to give court jurisdiction does not show bad faith or oust court of jurisdiction).

25. Defendants discuss the allegations below solely to demonstrate that the amount in controversy in this matter exceeds $75,000. Defendants deny that Plaintiff is entitled to any damages, and Defendants deny that Plaintiff can recover on any of his theories of recovery. The below estimates of the amount placed in controversy by Plaintiff do not constitute an admission by Defendants as to Plaintiff's actual damages, if any. Defendants reserve all affirmative defenses and arguments as it relates to Plaintiff's alleged damages.

26. The Ninth Circuit employs the following framework for determining the amount in controversy on removal. First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may consider facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy. *Id.*; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted).

27. Plaintiff's Complaint alleges and seeks to recover: (1) "past and future earnings and other employment benefits" (Compl. at ¶ 90; *see also* ¶¶ 54, 64, 97);

(2) civil penalties, in addition to other penalties, pursuant to Labor Code § 1102.5 *et seq*. (Compl. at ¶¶ 84, 92); (3) general damages for mental distress (Compl. at ¶¶ 54, 64, 71, 98); (4) punitive damages (Compl. at ¶¶ 65, 72, 93); and (5) attorney fees (Compl. at ¶ 99). (*See also* Prayer at ¶¶ 1-5.)

28. In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of his own claims against a single defendant") (internal quotations omitted).

29. Additionally, as the Ninth Circuit has clarified, "the amount in controversy is not limited to damages incurred prior to removal-for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414-415.

30. Courts have repeatedly interpreted the Ninth Circuit's holding in *Chavez* to mean that all lost wages from the time of the individual's termination *up through the date of trial* must be considered part of the amount in controversy. *See Thayer v. Securitas Sec. Servs. USA, Inc.*, No. 220CV10350ODWMRWX, 2021 WL 1263837, at *2 (C.D. Cal. Apr. 6, 2021) (plaintiff sought past and future lost wages, so amount in controversy includes all wages from termination through date of trial); *Wickstrum v. FCA USA LLC*, No. 3:20-CV-00336-L-JLB, 2021 WL 532257, at *2 (S.D. Cal. Feb. 12, 2021) ("[P]otential offset does not alter the amount Plaintiff

might obtain if he is successful at trial (*i.e.*, what is at stake)."); *Calhoun v. Consol. Disposal Serv., LLC*, No. CV192315MWFMRWX, 2019 WL 2522677, at *3 (C.D. Cal. June 18, 2019) (where trial date not set, defendant may use conservative estimate to calculate lost wages at stake in the lawsuit).

  **A.** **Alleged Economic/Compensatory Damages and Penalties**

  31. In his Complaint Plaintiff alleges that he was discriminated, retaliated against, and wrongfully terminated because of his age, his purported whistleblower complaint, and an alleged disability. Plaintiff also alleges that he is entitled to lost wages, future earnings, and other employment related benefits caused by his wrongful discharge, mental distress damages, civil penalties, and punitive damages. (Compl. at ¶¶ 54, 64-65, 71-72, 84, 90, 92-93, 97-99; Prayer at ¶¶ 1-5.)

  32. For purposes of determining the amount in controversy, "[i]f a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them." *Chavez*, 888 F.3d at 417. Accordingly, "[w]here, as here, a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future wages are included in the amount in controversy." *Id.* at 418.

  33. Plaintiff started working for an ABM predecessor company in 1988. (Compl. at ¶ 13; Young Decl. ¶ 4.) Plaintiff alleges that he was wrongfully terminated on or about October 23, 2020. (Compl. at ¶ 13.) Plaintiff was a full time, exempt employee making a yearly salary of $85,090. (Young Decl. ¶¶ 4-5**.)**

  34. Assuming the foregoing to be true, Plaintiff would have continued to earn a at least $85,090 per year and assuming that he did not get demoted for performance issues. (Alarcon Decl. ¶ 4.) From October 23, 2020 through November 23, 2022, or the date the complaint was served, is 2 years and one month, and at $85,090 per year, that results in **purported lost wages of approximately**

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

**$177,197.83**.[1]

35. And, at the time this case is removed, it is statistically likely to be resolved at trial in January 2026 (or approximately 37 months from the date of removal).[2] Plaintiff could reasonably incur an **additional $276,542.50 in lost future wages** (39 months x $7,090.83) from the date the complaint was filed through trial, based on the allegations in Plaintiff's complaint.  This estimate does not include any pay raises Plaintiff may have been eligible to receive each year in 2020 through 2026.  (*See* Alarcon Decl. at ¶ 5.)

36. Plaintiff also seeks civil penalties of not less than $10,000 per purported violation, pursuant to Labor Code § 1102.5.  (Compl. at ¶¶ 84, 92.)  It is not clear from the Complaint how many purported violations Plaintiff alleges occurred, but it is safe to say that he alleges at least one.

37. Accordingly, based on the allegations in Plaintiff's Complaint, the lost past and future wages and penalties claimed by Plaintiff "at issue" in this case, up to the date of trial, total **$63,813.33** ($177,270.83 + $276,542.50 + $10,000.00).  Of course, Defendants strongly contend that Plaintiff is not entitled to such damages from Defendants – these calculations are purely for purposes of establishing the amount in controversy for removal.

38. This more than satisfies the amount in controversy requirement.

**B.     Alleged Emotional Distress Damages Component**

39. The emotional distress component of Plaintiff's alleged damages also must be considered in determining whether the amount in controversy requirement

---

[1] Calculated by dividing the yearly salary by 12 months and then multiplying the monthly salary (or $7,090.83) by 25 months.

[2] Statistics maintained by the Administrative Office of the United States Courts pursuant to 28 U.S.C. § 604(a)(2) indicate that in the Northern District of California, as of June 30, 2022, the median time from filing a civil action in federal court to final disposition of the action through trial is 37.4 months.  (*See* Dillion Decl. at ¶ 5, Exh. D.)  Defendants request that the Court take judicial notice of these facts pursuant to Federal Rule of Evidence, Rule 201.

has been established. *Kroske*, 432 F.3d at 980. "Emotional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[T]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial").

40. Plaintiff provides only conclusory allegations that he has suffered mental distress and claims general damages in an amount to be proven at trial. (*See* Compl. at ¶¶ 54, 64, 71, 98; Prayer at ¶ 1.iii.) To establish the amount in controversy, particularly with respect to emotional distress damages, a defendant also may rely on jury verdicts in cases involving similar facts. *Kroske*, 432 F.3d at 980.

41. Emotional distress damages, if proven, can be significant in employment cases involving alleged disability discrimination or retaliatory termination. *See, e.g.*, *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum"); *Campbell v. Nat'l Passenger R.R. Corp.*, 2009 WL 692094 (N.D. Cal., Mar. 3, 2009) (awarding $120,000 in non-economic damages). Indeed, the Northern District of California concluded that the $75,000 amount in controversy requirement was satisfied in *Rodriguez v. Home Depot USA, Inc.* due to emotional distress damages alone, reasoning as follows:

> Defendant Home Depot has similarly satisfied its burden regarding emotional distress damages in this case. The cases it cites, while not perfectly analogous, show that emotional distress damages in cases involving retaliatory termination may be substantial. For example, in *Kolas v. Access Business Group*, 2008 WL 496470 (Cal. Superior Jan. 14, 2008), a jury awarded $200,000 in emotional distress damages based on a claim that the plaintiff was fired based on his age and disability and in retaliation for filing a workers' compensation claim for a herniated disc he sustained on the job. In *Liemandt v. Mega RV Corp.*,

> a jury awarded $385,000 in pain and suffering damages to a plaintiff who alleged that he was wrongfully terminated due to his age when he returned to work following a massive heart attack. 2011 WL 2912831 (Cal. Superior Ct. Feb. 4, 2011). … [Accordingly], the Court finds based on the awards in the retaliatory termination cases discussed above that Home Depot has demonstrated that if Rodriguez prevails in this action, her emotional distress damages more likely than not will exceed $75,000.

2016 WL 3902838, *5 (N.D. Cal. July 19, 2016).

42.   Indeed, courts have readily found that emotional distress damages in single plaintiff employment case, alone, routinely exceed $75,000. *Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 WL 3248665, at *4 (C.D. Cal. June 8, 2016) (citing cases therein). Specific jury verdicts in employment cases in California indicate that awards well in excess of the jurisdictional requisite have been awarded to plaintiffs (including short-term employees with minimal or no economic damages) in cases with facts similar to this case. *See, e.g.*:

    a.   *Burton v. Pulmocare Respiratory Servs.*, CIVDS1509192, 2016 WL 6833211 (Cal. Super. Ct.) (San Bernardino County Superior Court Case No. CIVDS1509192; verdict date of October 26, 2016): $396,735. The plaintiff informed her employer she was pregnant. The employer attempted to convert the plaintiff to part-time, and when she protested, the employer terminated her. The plaintiff's complaint included causes of action for pregnancy discrimination, retaliation, failure to prevent discrimination based on pregnancy, and wrongful termination. The jury granted the plaintiff $275,000 for pain and suffering.

    b.   *O'Brien v. Dennis E. Baca d/b/a Baca Properties*, RG-13-681132; 2015 WL 8545647 (Cal. Super.) (Alameda County Superior Court Case No. RG-13-681132; verdict date of June 19, 2015): $1,325,000. Plaintiff was a relief manager for an airport self-storage facility who alleged that when she became pregnant, her supervisor began to discriminate against her, harass her, retaliate against her, and was ultimately terminated. The jury found for the plaintiff, and awarded a seven-figure verdict with $300,000 in pain and suffering damages.

   c. *Hernandez v. Pac. Bell Tel. Co.*, No. 37-2014-00014271, 2016 WL 1715445 (Cal. Super.) (San Diego County Superior Court Case No. 37-2014-00014271; verdict date of April 15, 2016): $2,102,884.  Plaintiff was a sales and service representative who alleged that when she returned from a disability-related leave of absence, the defendant harassed, discriminated against her, harassed her, retaliated against her, and ultimately terminated her.  The jury found for the plaintiff and awarded a seven figure verdict with $1,500,000 in pain and suffering damages.

43. Thus, if Plaintiff is able to prove his discrimination, retaliation, and wrongful termination claims at trial, it is reasonable to conclude that Plaintiff will seek, and a jury could award, at least in excess $75,000, for emotional distress damages alone.  (Of course, Defendants deny that Plaintiff is entitled to any such amounts or has suffered any emotional and mental distress.)

  **C.** **Alleged Punitive Damages Component**

44. Plaintiff also seeks punitive damages.  (Compl. at ¶¶ 2, 65, 72, 93; Prayer at ¶ 2.)  Again, an award of punitive damages could easily exceed the $75,000 threshold by itself.  *Meija v. Parker Hannifin Corp*, CV 17-8477-MWF (RAOx), 2018 WL 582325, at *4 (C.D. Cal. Jan. 26, 2018).

45. Other cases have noted that punitive damages awards in Southern California often exceed the jurisdictional amount.  *See Sawyer v. Retail Data, LLC*, No. CV 15-184-JVS (RNBx), 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (holding amount in controversy requirement met partly because defendant "cite[d] to similar recent Orange County and Los Angeles County employment discrimination cases where plaintiffs were awarded from $50,000 to $7.5 million in punitive damages"); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *4 (accepting defendant's argument that punitive and emotional distress damages alone could exceed $75,000 because punitive damages are often calculated as a multiplier of compensatory damages); *Mitri v. Walgreen Co., Inc.*, No. 10CV00538(AMI), 2011 WL 7447636 (E.D. Cal. Nov. 15, 2011) (jury awarding $1.15 million in

-12- Case No.
PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332 AND 1441

punitive damages in whistleblower suit similar to this one); *see also Ko v. The Square Grp.*, 2014 WL 8108413 (Los Angeles Superior Ct., June 16, 2014) (a Los Angeles jury awarded the plaintiff $500,000 in punitive damages based on a wrongful termination claim); *Daoud v. Smith's Food & Drug Ctrs., Inc.*, No. BC124485, 1996 WL 526059 (Los Angeles Superior Ct., June 18, 1996) (awarding $75,000 for punitive damages in wrongful termination suit).

### D. Alleged Attorneys' Fees Component

46. Where an underlying statute authorizes an award of attorneys' fees, such potential fees also may be included in calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Here, Plaintiff seeks "attorneys' fees" and "costs of suit incurred." (*See* Compl. at ¶¶ 92, 9, 86; Prayer for Relief at ¶¶ 3, 5.)

47. As the Ninth Circuit explained in *Chavez*, when determining the amount in controversy, attorneys' fees are calculated based on the *total* possible recovery, and not just fees incurred as of the time of removal. *Chavez*, 888 F.3d at 417 ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude, in light of *Chavez*, and our precedents, that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."); *Lucas v. Michael Kors (USA), Inc.*, No.CV 18–1608–MWF (MRWx), 2018 WL 2146403, at *11 (C.D. Cal. May 9, 2018) ("The broad holding [in *Chavez*] strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorneys' fees. Therefore, the Court agrees that unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Bernstein v. BMW of N. Am., LLC*, Case No. 18-cv-01801-JSC, 2018 WL 2210683, at *2 (N.D. Cal. May 15, 2018) ("The Ninth Circuit's recent decision in *Chavez* . . . holding that the amount

in controversy is what is at stake in the litigation at the time of removal suggests that the attorneys' fees in the context of the amount in controversy requirement should be calculated based on the total possible recovery and not just the fees incurred to date—resolving a previously unresolved question.").

48.  Here, assuming that just an average amount of pre-trial discovery, trial preparation, and trial attendance occurs in this case, a potential attorneys' fees award will likely exceed the $75,000 jurisdictional threshold regardless of any other claimed damages. Multiple courts have recognized that single-plaintiff suits such as this one easily generate over $100,000 in attorneys' fees. *See*, *e.g.*, *Ponce v. Med. Eyeglass Ctr., Inc.,* No. 2:15-cv-04035-CAS (JEMx), 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (collecting cases); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (same).

49.  At a minimum, this case is likely to accrue at least $30,000 in attorneys' fees. Multiple courts have recognized that in single-plaintiff cases similar to this one, attorneys are likely to accrue at least $30,000 in attorneys' fees (100 hours of attorneys' time multiplied by a $300 hourly rate). *See, e.g.*, *Dias v. Burberry Ltd.*, No. 21-CV-192-MMA (JLB), 2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021) (finding defendant's conservative estimate of 100 hours at $300/hr reasonable); *Avila v. Kiewit Corp.*, No. CV 19-5740-MWF-JPR, 2019 WL 4729641, at *6 (C.D. Cal. Sept. 26, 2019) (In an order denying a motion to remand, explaining "[a] number of courts have held that 100 hours and an hourly rate of $300 is an appropriate and conservative estimate for employment cases."); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *5 (applying same rate and hours).

50.  Accordingly, the Complaint contemplates an amount "at stake" in this litigation which far exceeds the $75,000 jurisdictional threshold.

## V.   REMOVAL IS TIMELY

51.  This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of the

date when Defendant, through its counsel, was served with the Summons and Complaint. 28 U.S.C. § 1446(b)(1); *Lerma*, 2011 WL 2493764, at *2. (*See* Dillion Decl. at ¶ 3, Exh. B.)

## VI. CONCLUSION

For the reasons stated above, this Court has jurisdiction under 28 U.S.C. section 1332 because this is a civil action between citizens of different states, and the matter in controversy more than likely exceeds $75,000, exclusive of interest and costs. Accordingly, Defendant may remove this action to this Court pursuant to 28 U.S.C. sections 1332 and 1441. Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

DATED: December 23, 2022

PAYNE & FEARS LLP
Attorneys at Law

By: /s/ Blake A. Dillion
BLAKE A. DILLION

Attorneys for Defendants
ABM Industries, Inc., ABM Industry Groups, LLC

4880-3066-8352.4